IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Gerald Richard Kelly,<br><br>      Plaintiff,<br><br>vs.<br><br>Anderson County Fire Protection<br>Commission; and<br>William J. Gibson, Jr., Anderson<br>County Fire Chief,<br><br>      Defendants. | Civil Action No.: 8:07-1171-HMH-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

  This matter is before the Court on the defendants' motion for summary judgment [Doc. 45] pursuant to Federal Rule of Civil Procedure 56. The plaintiff has pled claims of disability discrimination pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq*. By order filed December 27, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a response in opposition to the motion for summary judgment.

  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

  The plaintiff was employed by the defendant Anderson County Fire Protection Commission (hereinafter the "defendant")[1] as a dispatcher from August 15, 1999, through November 15, 2005. (Compl. ¶ 1; Def. Ex. A, Gibson Aff. ¶ 6). The defendant is a fire

---

[1] Anderson County Fire Protection Commission is the only viable defendant. *See Baird ex rel. Baird v. Rose*, 192 F.3d 462, 471 (4th Cir. 1999) (recognizing that the ADA does not provide a cause of action for discrimination by private individuals). Of course, the Court's recommendation applies equally to both defendants.

protection commission, comprised of more than 850 volunteer firefighters responding from 28 stations throughout Anderson County. (Gibson Aff. ¶ 4.) Throughout his employment with the defendant, the plaintiff worked exclusively as a dispatcher and never held any supervisory position. (Gibson Aff. ¶ 7; Def. Ex. B, Kelly Dep. at 11, 34-35.)

In his Complaint, the plaintiff alleges that he suffers from diabetes, anxiety disorder and insomnia. (Compl. ¶ 2.) The plaintiff further contends that due to his conditions he could not tolerate the stress of his work as a dispatcher. (Compl. ¶ 9.) Accordingly, the plaintiff applied for at least two vacant Fire Marshal positions but his applications were rejected by the defendant. The plaintiff also applied for a Communications Supervisor position but was denied that promotion as well. The plaintiff contends that he was denied the promotions because of his diabetic condition.

The defendant contends that it promoted a Jimmy Ray Sutherland and a Kevin Christenbury to the vacant Marshal positions because they were more qualified than the plaintiff. (Def. Ex. A, Gibson Aff. ¶¶ 33-40.) The plaintiff was denied the Communications Supervisor position, in favor of a Keith Sonefelt, because the plaintiff lacked the necessary interpersonal skills that the defendant sought for the position. (Def. Ex. A, Gibson Aff. ¶¶ 27-28, Ex. 1, 2.)

In the summer of 2005, the plaintiff became aware that his position was being relocated to Central Dispatch. (Def. Ex. A, Gibson Aff. ¶ 40.) Shortly thereafter, beginning on August 24, 2005, he began taking medical leave at the direction of his treating physician, Dr. James Smith. (Gibson Aff. at ¶ 41; Kelly Dep. at 31-32.) The plaintiff was released to return to work by Dr. Smith on November 16, 2005, without restrictions. (Gibson Aff. ¶ 42; Kelly Dep. at 48, 57.) Prior to his return, the plaintiff met with the defendant Fire Chief William Gibson and Assistant Fire Chief Rocky Whitfield to discuss his employment with the defendant. (Gibson Aff. ¶ 43.) At the meeting, the plaintiff expressed his dissatisfaction with the defendant's decision not to promote him to the most recent open position of Fire

Marshal. (Gibson Aff. ¶ 44.) Notwithstanding, the plaintiff was encouraged to return to his position as a dispatcher. (Gibson Aff. ¶ 46.) The plaintiff, however, refused to return as a dispatcher and voluntarily resigned his employment with the defendant. (Gibson Aff. ¶ 45, Ex. 5; Kelly Dep. at 57.)

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this

3

standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **ANALYSIS**

The plaintiff has pled a failure to promote claim under the ADA for both the defendant's alleged refusal to promote him to the positions of Fire Marshal and Communications Supervisor and for its allegedly constructive discharge of his employment, on account of his diabetic condition.[2] The threshold question is whether the plaintiff is disabled within the meaning of the ADA. A court may resolve this issue as a matter of law. *See Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 254 (4th Cir. 2006). The Court

---

[2] The plaintiff's alleged impairments include diabetes, anxiety disorder, and insomnia. (Compl. ¶ 2). The plaintiff, however, has since acknowledged that his limitations all stem from his diabetes and his constant effort to keep his blood sugar regulated. (Kelly Dep. at 71; Smith Dep. at 12.)

4

concludes that the plaintiff has produced no evidence from which a jury could conclude that his condition meets the ADA's definition of disability.

### I. DISABILITY UNDER THE ADA

The ADA provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

The defendant contends that the plaintiff is not disabled as defined by the Act. The Court agrees. A disability under the ADA is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[3]  42 U.S.C. § 12102(2). To qualify as disabled under subsection (A) of Section 12102(2) of the ADA, therefore, the plaintiff must show: (1) that he has a physical or mental impairment; (2) that this impairment implicates at least one major life activity; and (3) that the limitation on that major life activity is substantial. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195-97 (2002). Merely having an impairment does not make the plaintiff disabled for purposes of the ADA. *Id.* at 195.

Critically, in this case, the plaintiff's own treating physician does not perceive the plaintiff as substantially limited in any major life activity. (Def. Ex. C, Smith Dep. at 8-9.) As Dr. James A. Smith explained, should the plaintiff's blood sugar drop, the plaintiff should be able to eat something and recover from any adverse effects rather quickly. *Id*. Dr.

---

[3] It appears that the plaintiff claims that he is disabled as defined in both subsections (A) and (C) of Section 12102. (See generally Pl. Resp. Summ. J.) In order to prove that he had a "record of disability," under subsection (B), the plaintiff would be required to establish that he had "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k) (2000); *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001). To the extent he seeks to be classified as having a disability as defined by subsection (B), the Court finds that his claim would fail for essentially the same reasons as for subsection (A).

Smith could see no reason why the plaintiff would have been unable to return to work as a dispatcher. *Id*. at 14. He specifically testified that the plaintiff should have no limitations in any life activity, major or otherwise. *Id*. at 8.

The plaintiff himself has expressly admitted that he is only substantially limited in his ability to continue working as a *dispatcher*. (Def. Ex. B, Kelly Dep. at 72-73.) The plaintiff agrees that there are other positions he could perform without restriction despite his alleged disability, including Fire Marshal and Communications Supervisor. *Id*. At his deposition, the plaintiff testified as follows:

> Q: So, you'd agree with me that the substantial limitation that, that we're dealing with – let me go back to the definition of, of "Disability," substantial limiting of major life activity – what you were substantially limited in, truth be told, was working as a dispatcher?
>
> A: Yes.
>
> Q: But not other Jobs that you were qualified for; correct?
>
> A: No.

*Id*. at 73. As the defendant contends, the inability to perform a single particular job, such as dispatching, does not constitute a substantial limitation in the major life activity of working. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999) (in order to be substantially limited in working "one must be precluded from more than one type of job, a specialized job, or a particular job of choice"); *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 199 (4th Cir. 1997) (exclusion from one position of employment does not constitute a substantial limitation of a major life activity) *abrogated on other grounds by Baird ex rel. Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999); *see also* 29 C.F.R. 1630.2(j)(3)(I).

The Fourth Circuit has held that "[t]he term 'major life activities' refers to 'those activities that are of central importance to daily life,'" and "that the average person in the general population can perform with little or no difficulty." *Heiko*, 434 F.3d at 254 (quoting *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 274 (4th Cir.2004). The plaintiff has not even attempted to identify such an activity much less to put forward admissible evidence as to the duration and magnitude of the limitation imposed thereon. *See, e.g.,*

6

*Heiko*, 434 F.3d at 254 (finding substantial limitation where the plaintiff "was required to spend at least four hours, three days a week undergoing dialysis in order to remove waste from his body").

A reasonable jury could not conclude that the plaintiff has a medical condition which limits a major life activity in a substantial way. The testimony of the plaintiff's doctor and the plaintiff himself have eliminated all genuine issues of fact in this regard.

In his response to summary judgment, the plaintiff claims that he "now realizes" that he has difficulty communicating and interacting with others and can be withdrawn. (Pl. Resp. at 7-8.) The plaintiff implies that his diabetes limits him in this regard. The plaintiff, however, has not produced any evidence that his deficit of interpersonal skills is the product of any medical condition, diabetic or otherwise.

Alternatively, the plaintiff contends, pursuant to 42 U.S.C. 12102(2)(C), that he was regarded by the defendant as having been disabled. In order to demonstrate that the defendant regarded him as disabled, however, the plaintiff must show that the defendant mistakenly believed him to have either a substantially limiting impairment that he did not have, or a substantially limiting impairment when, in fact, his impairment was nonlimiting. *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 471 (4th Cir. 2002); *see also Murphy v. United Parcel Serv.*, 527 U.S. 516, 521-22 (1999) ("A person is 'regarded as' disabled within the meaning of the ADA if his or her employer mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities.").

The defendant argues that none of the decisionmakers were even aware of the plaintiff's diabetic condition. The plaintiff, however, has testified that he spoke "all the time" with a Mark Harouff about his medical problems. (Def. Ex. B at 66.) But, when asked whether any of the individuals who actually made the decision concerning the promotion to fire marshal were aware of his condition, the plaintiff admitted that none did. *Id*. at 66-67. It does appear that Harouff was a commissioner of the Anderson County Fire Protection Commission. (Pl. Ex. A at 4.) The defendant has not explained Harouff's role in the

promotion decisions. Accordingly, some issues of fact exist as to Harouff's status as a decisionmaker and his knowledge concerning the plaintiff's diabetic condition.

The plaintiff, however, has produced no evidence from which a reasonable jury could conclude that Harouff, even to the extent he was aware of the plaintiff's condition, mistakenly believed him to have either a substantially limiting impairment that he did not have, or a substantially limiting impairment when, in fact, his impairment was nonlimiting. *Pollard*, 281 F.3d at 471. There is no evidence whatsoever concerning Harouff's perception of the plaintiff's condition. "[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996). Accordingly, evidence of Harouff's awareness alone cannot defeat summary judgment. The plaintiff has not met his burden under Rule 56 of the Federal Rules of Civil Procedure to come forward with evidence demonstrating a triable issue of fact on his claim that the defendants regarded him as being disabled.

**II.   FAILURE TO PROMOTE**

Even if the plaintiff could establish a qualifying disability under the ADA, his claim would fail. To establish a failure to promote claim under the ADA, the plaintiff may rely on a modified version of the *McDonnell Douglas* proof mechanism. *See* Heiko, 434 F.3d at 258 (because the employer disclaims any suggestion that its decision was founded on the plaintiff's disability the case should be analyzed under the familiar framework set forth in *McDonnell Douglas*). Under *McDonnell Douglas*, the plaintiff must first make out a *prima facie* case of discrimination. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir.2005). If he does so successfully, the burden then shifts to the defendant to provide a legitimate, non-discriminatory explanation for its decision. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 545 (4th Cir.2003). Once such a neutral reason is proffered, the burden reverts to the plaintiff to establish that the employer's non-discriminatory rationale

is a pretext for intentional discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

At that point, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id*. at 148; *see also Anderson*, 406 F.3d at 269. The plaintiff may also rely on ordinary principles of proof, using direct or indirect evidence to establish his claim, in lieu of the *McDonnell Douglas proof* scheme.[4]  *See Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001) (ADA).

### A. *Prima Facie* Case

In order to establish a *prima facie* case of failure to promote under the ADA, the plaintiff must prove by a preponderance of the evidence that: (1) he is within the ADA's protected class; (2) he applied for the position in question; (3) he was qualified for that position; and (4) the Defendants rejected his application under circumstances that give rise to an inference of discrimination. *See Heiko*, 434 F.3d at 258 (ADA); *see also Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 189 (4th Cir. 2004); *Bryant v. Aiken Reg. Med. Ctrs., Inc.*, 333 F.3d 536, 544-45 (4th Cir. 2003); *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir.1995).

The plaintiff cannot make out a *prima facie* case because, as stated, he cannot demonstrate any disability and, therefore, he is not with the ADA's protected class.  But even to the extent he could establish a *prima facie* case, the plaintiff has failed to rebut the defendant's proffer of a legitimate, non-discriminatory reason for not promoting him to Fire Marshal.

---

[4] The plaintiff is not bound to make his proof through the *McDonnell Douglas* scheme exclusively, nor is he required, necessarily, to prove that the nondiscriminatory reasons for his termination were pretext.  He may use ordinary principles of proof to demonstrate that his alleged disability was a motivating factor in the decision to terminate his employment.  *See Rhoads*, 257 F.3d at 391. Notwithstanding, the plaintiff has not produced any such evidence.

### B.    Legitimate Non-Discriminatory Reason

The defendant has met its burden of production by generally identifying the superior qualifications of other applicants as the legitimate, non-discriminatory reason for rejecting the plaintiff's application for the Fire Marshal position.  (Def. Ex. A, Gibson Aff. ¶ 40.)  "Job performance and relative employee qualifications [are] widely recognized as valid, non-discriminatory bas[i]s for any adverse employment decision."  *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *see also Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004); *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir. 1998) ("Inova's termination of Karpel was based on her unsatisfactory job performance, including, her tardiness and failure to complete her monthly summaries.")

### C.    Pretext

Because the defendant has proffered legitimate, non-discriminatory reasons for its actions, the plaintiff bears the burden of demonstrating that the real reason for denial of the promotion was, in fact, an unlawful one.  *See Reeves*, 530 U.S. at 142-43.   As is most common, the plaintiff attempts to satisfy this burden by suggesting that the defendant's proffered reason is pretextual or false.  *See id.* at 144.  Specifically, he claims that his qualifications were superior to those of the individuals hired.  Such a showing is difficult to make.

The Fourth Circuit has expressly instructed that, when comparing the relative job qualifications of two candidates, if "the plaintiff has made a strong showing that his qualifications are **demonstrably superior**, he has provided sufficient evidence that the employer's explanation may be pretext for discrimination."  *Heiko*, 434 F.3d at 261-62.  But where "a plaintiff asserts job qualifications that **are similar or only slightly superior** to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer."  *Id.* at 261 (citing *Dennis v. Columbia Colleton*

*Med. Ctr., Inc.*, 290 F.3d 639, 649 & n.4 (4th Cir.2002) (emphasis added); *Evans*, 80 F.3d at 960).

The defendants, in this case, awarded Kevin Christenbury and Jimmy Ray Sutherland Fire Marshal positions over the plaintiff. Both Christenbury and Sutherland had extensive supervisory and managerial experience, which the plaintiff did not have. (Gibson Aff. ¶¶ 33-40.) Christenbury had been previously certified as a Fire Marshal and had served as the Fire Chief for the Corinth-Shiloh Fire Department. *Id*. ¶ 31. Sutherland had served as the Chief of Police of the Iva Police Department for 21 years and as Fire Chief for the Iva Fire Department for over 12 years. *Id*. ¶ 35.

Conversely, the plaintiff admits that in the past 19 years as a dispatcher he had never served in a supervisory or managerial position. (Kelly Dep. at 11, 34-35.) The plaintiff does not dispute that good supervisory, managerial, technical and human relations skills were essential to the position. (Kelly Dep. at 30-31.) The plaintiff's only evidence of superior qualifications is evidence that he had certification training, which Sutherland did not. (Pl. Ex. F at 5.) The plaintiff has emphasized that this qualification was a listed requirement in the job posting. (Pl. Ex. H.)

To the extent Sutherland did not have a qualification expressly listed in the job posting which the plaintiff had, the call becomes a closer one. In light of the other evidence of record, however, this showing still seems insufficient to raise an issue of fact as to whether the plaintiff's qualifications were demonstrably superior. Even accounting for the plaintiff's certification, it does not seem reasonable that a jury could conclude that the plaintiff even had comparable qualifications to Sutherland and Christenbury, considering their tenure of service in managerial positions with other fire departments and police

stations.[5] There is certainly no evidence from which a jury could conclude that the plaintiff was *demonstrably* more qualified.

In regards, to the Communication Supervisor position the defendant promoted a Keith Sonefelt. (Def. Ex. A, Gibson Aff. ¶ 28.) The position required a candidate who would serve as a leader in achieving a seamless and efficient transition to Central Dispatch. (Gibson Aff. ¶ 24.) The defendant has produced evidence that, as a dispatcher, Mr. Sonefelt excelled at his position, generally working above and beyond the expectations set by the defendant, while the plaintiff failed to get along with others, failed take initiative in his position, and needed to improve on his attitude. (Gibson Aff. ¶¶ 26-27, Ex. 1, 2.) In his response to summary judgment, the plaintiff has fully and affirmatively conceded such deficiencies. (Pl. Resp. at 1, 7, 8.)

In regards to both the Communication Supervisor and Fire Marshal positions, the defendant's were entitled "take into account' factors such as 'good interpersonal skills and . . . ability to lead a team'" in making the employment decision. *Hux v. City of Newport News*, 451 F.3d 311, 318 (4th Cir. 2006) (quoting *Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1130 (4th Cir. 1995). The plaintiff has made no effort to demonstrate his superiority in these attributes and, as stated, has admitted his own lack. He cannot, therefore, demonstrate that the defendant's articulated reasons were pretextual.

Accordingly, the plaintiff's failure to promote claim should be dismissed. Even if the district court were to conclude that issues of fact exist as to the relative qualifications of the plaintiff and the individuals promoted by the defendant, he could not prevail because he has failed to demonstrate that he was either disabled or so regarded. As a result, the Court

---

[5] The plaintiff contends that Christenbury's supervisory experience as Fire Chief is "no different" than the plaintiff's own experience as a member of the Board of Directors for the IVA Rescue Squad (Kelly Dep. at 55.). (Pl. Resp. at 11.) While the Court is doubtful of the claim, even if it is taken as true, the evidence would not tend to suggest that the plaintiff was demonstrably more qualified; in fact, by the plaintiff's own admission, the two individuals would be comparable in qualification. (Pl. Resp. at 11.)

need not consider whether any acts of the defendant constituted a constructive discharge of the plaintiff.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 45] be GRANTED.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

May 2, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).